IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Kathryn Price,                          Case No. 3:08CV420

       Plaintiff,

   v.

Corey Taylor, et. al,                    ORDER

       Defendant.

This is a contract dispute between a borrower and a lender. Plaintiff Kathryn Price alleges that Defendants HSBC Mortgage Services, Inc. [HSBC], an Illinois-based lender and purchaser of residential mortgage loans, and Intervale Mortgage Corporation [Intervale], a New Jersey-based lender and purchaser of residential mortgage loans, illegally extended her a loan she could not afford to repay. She asserts violations of the Fair Housing Act, 42 U.S.C. § 3601 et seq., and state law causes of action for fraud, negligence, and breach of fiduciary duty. Price also alleges that the arbitration agreement she executed with the loan is unconscionable. Jurisdiction is proper under 28 U.S.C. § 1331 and § 1367.

Defendant Midwest Financial and Mortgage Services [Midwest] is an Ohio-based provider of mortgage products, insurance products and investment services. Defendant Select Appraisal LLC [Select] is an Ohio-based appraiser of residential homes. Defendant Corey Taylor, a mortgage broker, is a former employee of Midwest.

Pending is defendants' joint motion to stay litigation pending arbitration.[1] [Doc. 15]. Price opposes the motion and requests this court grant leave for discovery. [Doc. 20]. For the reasons discussed below, defendant's motion shall be granted, and plaintiff's request for discovery shall be denied.

**Background**

In 2001, Price purchased a house in Toledo, Ohio. In August 2002, Select appraised Price's house. Subject to the appraisal, Midwest extended Price an adjustable-rate loan. Price alleges that the loan payments soon "ballooned," forcing her to file for bankruptcy in 2005. [Doc.1].

On or about April 10, 2006, Price executed a note and mortgage with Intervale refinancing the 2002 loan on her house. She also signed an arbitration agreement [Agreement] accompanying her new loan.

The Agreement provides:

This Arbitration Agreement, if signed and therefore accepted by You, is made a part of Your Loan Agreement with Lender. By signing this Arbitration Agreement, in consideration of the mutual promises contained herein, you agree that, upon election by Lender or by You, any Claim shall be resolved by binding arbitration pursuant to this Arbitration Agreement and the applicable rules then in effect of the Arbitration Administer selected at the time the Claim is initiated. Acceptance of this Arbitration Agreement by you is voluntary.

[Doc. 15, Ex. A].

Regarding its scope, the Agreement states, "any Claim shall be resolved by binding arbitration pursuant to this Arbitration Agreement . . . ." Further, it explains:

---

[1] Midwest Mortgage Services, Select Appraisal, L.L.C. and Corey Taylor are also named defendants in Price's complaint; however, they have not joined defendants' Joint Motion to Stay Litigation Pending Arbitration.

> "Claim" is to be given the broadest possible meaning, and shall mean any claim, dispute, or controversy, whether based upon contract, tort (intentional or otherwise), constitution, statute, common law, regulation, ordinance or equity and whether preexisting, present or future, including initial claims . . . and claims seeking relief of any type, including damages and/or injunctive, declaratory or other equitable relief, arising from or relating to Your Loan with Lender or the Loan Agreement, the relationships which result from Your Loan with Lender or the Loan Agreement, or any products or services offered in connection with Your Loan with Lender or the Loan Agreement, including, but not limited to, any dispute or controversy concerning, the validity or enforceability of this Arbitration Agreement, any party thereof or the entire Loan Agreement, and whether or not the Claim is subject to arbitration.

[*Id.*]

> The Agreement, however, excludes:
>
> 1) any individual action brought by the You in small claims court or in your state's equivalent court, unless such action is transferred, removed or appealed to a different court; 2) any action to effect a judicial or quasi-judicial foreclosure; 3) any eviction or other summary proceeding to secure possession of real property securing a loan; 4) any action to assert, collect, protect, realize upon or obtain possession of the collateral for a loan in any bankruptcy proceeding; 5) any action to quiet title; 6) any action insofar as it seeks ancillary or provisional remedies in connection with any of the foregoing; and 7) any action to determine the validity and effect of Section 7.

[*Id.*]

> The Agreement also allocates costs:
>
> If Lender files a claim, Lender shall pay all filing costs. If You file a Claim, filing costs and administrative fees (other than hearing fees) shall be paid as follows unless otherwise provided by state law: (a) You agree to pay for the initial cost of filing the Claim up to the maximum amount of $100.00; and (b) at your request, or if required by the Arbitration Administrator's rules, Lender will pay for filing costs over $100.00 and for any administrative fees charged by the Arbitration Administrator for a claim less than or equal to Your loan amount. Any filing costs and/or administrative fees assessed for a claim in excess of Your loan amount shall be paid by You. Lender shall pay the cost of one full day of arbitration hearings. Fees for subsequent hearing days request by You or by Lender will be paid by the requesting party. If the arbitrator requests more than one day of hearing, the parties shall share the cost of the additional days, unless another fee arrangement is directed by the arbitrator.

[*Id*.]

The arbitrator must hold the hearing in the city nearest the borrower's residence in which a federal district court is located, in the absence of a contrary agreement. The party initiating arbitration may choose either the National Arbitration Forum or the American Arbitration Association to govern the proceeding.

On the Agreement's last page, a warning appears directly over the signature line:

BY SIGNING BELOW, THE PARTIES ACKNOWLEDGE THAT THEY HAD A RIGHT TO LITIGATE CERTAIN CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, AND THAT THEY WILL NOT HAVE THAT RIGHT IF EITHER PARTY ELECTS ARBITRATION PURSUANT TO THIS AGREEMENT, EXCEPT AS PROVIDED OTHERWISE HEREIN. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS UPON ELECTION OF ARBITRATION BY EITHER PARTY. THE PARTIES FURTHER ACKNOWLEDGE THAT THEY HAVE READ THIS ENTIRE ARBITRATION AGREEMENT CAREFULLY, THAT THEY RECEIVED A DUPLICATE COPY OF THIS AGREEMENT, AND THAT THEY ARE ENTERING INTO THIS AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS OTHER THAN THOSE CONTAINED IN THE ARBITRATION AGREEMENT.

[*Id*.]

Subsequently, Intervale sold the 2006 loan to HSBC, making HSBC the successor in interest to Intervale's rights under Price's mortgage.

Price alleges that, in June, 2007, an attorney informed her "of the fraudulent nature of the 2002 loan and the fraudulent [August 2002] appraisal." [Doc. 1].

On April 20, 2008, Price filed suit seeking compensatory and punitive damages in excess of $100,000.

On April 22, 2008, defendants filed a Joint Motion to Stay Litigation pending arbitration, contending that Price agreed to arbitrate her disputes.

On May 27, 2008, Price filed her Opposition to Defendant's Motion. In it, Price requested this court grant the parties leave to conduct discovery on issues of unconscionability, mutuality, limitations on remedies, and costs of arbitration.

## Discussion

Through the Federal Arbitration Act ("FAA"), 9 U.S.C. §1 et seq., Congress has declared a national policy favoring arbitration. *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). A written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2. The FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under any agreement in writing for such arbitration, the court shall . . . on application of one of the parties stay the trial of the action until such arbitration had been had in accordance with the terms of the agreement.

*Id.* § 3.

As arbitration is a matter of contract, a court cannot require a party "to submit to arbitration any dispute which it has not agreed so to submit." *AT&T Techs v.Communications Workers of America*, 475 U.S. 643, 648 (1986).

Accordingly, to grant a motion to stay proceedings and compel arbitration, a court must find that: 1) the parties agreed to arbitrate; 2) the claims fall within the arbitration agreement's scope; and 3) Congress did not intend to preclude any federal statutory being raised by the parties from arbitration. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

### A. Scope of Arbitration

Price asserts violations of the Fair Housing Act and state law causes of action for fraud, negligence, and breach of fiduciary duty. The Agreement does not exclude these claims from the scope of arbitration.

5

In determining whether claims are within the arbitration agreement's scope, the strong federal policy for arbitration demands that "any ambiguities or doubts as to the parties' intentions . . . be resolved in favor of arbitration. *Stout*, *supra,* 228 F.3d at 714.

The Agreement, without qualification, states that the parties shall resolve any claim through arbitration. It, furthermore, defines "claim" in the broadest possible terms, explaining that it covers "any claim, dispute, or controversy, whether based upon . . . contract, tort (intentional or otherwise), constitution, statute, common law[.]" This broad language clearly shows the parties' intent to include any claim that would arise between them. Price's claims cannot escape such encompassing language in the absence of an express or implied agreement to the contrary. Therefore, the arbitration clause covers all of Price's claims.

### B. Valid Agreement

Price alleges that her assent to the Agreement was invalid because defendants' fraud in 2002 induced her acceptance of the original loan. Price, alternatively, alleges that the Agreement is unconscionable.

In determining whether the parties formed a valid arbitration agreement, "state law may be applied if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally, although the FAA preempts 'state laws applicable to only arbitration provisions.'" *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-87, (1996)). "State law governs 'generally applicable contract defenses [to an arbitration clause], such as fraud, duress, or unconscionability.'" *Id.* at 889 (quoting *Casarotto*, *supra,* 517 U.S. at 687).

6

A federal district court "may consider only claims concerning the validity of the arbitration clause itself, as opposed to challenges to the validity of the contract as a whole. Once the district court determines that a valid agreement to arbitrate exists, the arbitrator will decide challenges to the contract containing the arbitration clause."*Cook v. All State Home Mortg., Inc.*, 2006 WL 918454, at *5 (N.D. Ohio) (citing *Burden v. Check Into Cash of Kentucky, LLC*, 267 F.3d 483, 488 (6th Cir. 2001)).

Price's allegations of fraud center solely on the 2002 agreement's allegedly illegal nature. Price does not independently claim that fraud induced the 2006 agreement. Rather, she alleges that the Agreement is invalid because it followed a separate allegedly unfair agreement. [Doc. 20]. Accordingly, Price's claim for fraud does not effect the Agreement's validity.

### C. Unconscionability

Separately, Price claims the Agreement is unconscionable. She specifically alleges that: 1) the arbitration agreement lacked mutuality; 2) enforcement will result in prohibitive costs; and 3) the clause unreasonably limits her remedies. I find none of these claims well-taken.

Under Ohio contract law, for an arbitration clause to be unenforceable, it must be both procedurally and substantively unconscionable. *Id. Anderson v. Delta Funding Corp.*, 316 F. Supp.2d 554, 564 (N.D. Ohio 2004). Generally, a contract is procedurally unconscionable when there is an absence of meaningful choice on the part of one of the parties to a contract, and substantively unconscionable when the contract's terms are unreasonably favorable to the other party. *Collins v. Click Camera & Video*, 86 Ohio App.3d 826 (1993).

### 1. Procedural Unconscionability

In determining whether a contract is procedurally unconscionable, Ohio courts focus on several factors, including: the parties' age, education, intelligence, business expertise and experience, and relative bargaining power; which, in turn, involves consideration of which party drafted the contract; whether the contract's terms were explained to the weaker party; and whether the parties could modify the printed terms. *Collins*, *supra,* 86 Ohio App.3d at 834. "The crucial question is whether 'each party to the contract, considering his obvious education or lack of it, [had] a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print[.]" *Ohio Univ. Bd. of Trs. v. Smith*,132 Ohio App. 3d 211, 220 (1999) (quoting *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965)).

Price's allegations are insufficient to support a claim of procedural unconscionability. She has not advanced that her age, education, or intelligence prevented her from understanding the Agreement. Nor does she argue that defendants rushed or forced her to sign it.

Furthermore, the agreement is clear and explicit. The waiver of trial rights is typed in twelve-point font, and placed directly above Price's signature on a separate page. Price signed every page of the Agreement. The Agreement was not procedurally unconscionable.

### 2. Substantive Unconscionability

A contract is substantively unconscionable when its terms are commercially unreasonable. No set of general factors governs commercial unreasonableness; rather considerations will vary on a case by case basis. *Dorsey v. Contemporary Obstetrics & Gynecology*, *Inc.*, 133 Ohio App.3d 75, 80 (1996) (citing *Collins*, *supra,* 86 Ohio App.3d 826 at 834). Price's allegations regarding lack of mutuality, prohibitive cost, and unfair limitation of remedies are factors a court may consider. *See*

*Morrison v. Circuit City Stores*, Inc., 317 F.3d 646, 666 (6th Cir.) (analyzing mutuality, prohibitive cost, and remedy limitation arguments under substantive unconscionability prong).

### a. Mutuality

Price claims the Agreement lacks mutuality because it exempts from arbitration certain claims which she alleges only the defendants would bring. I find the mutuality doctrine does not apply here.

In Ohio, a valid arbitration clause does not fail for lack of mutuality, as long as consideration supports the contract. *Anderson v. Delta Funding Corp.*, 316 F. Supp.2d 554, 566-67 (2004); *Fazio v. Lehman Bros.*, 340 F.3d 386, 396-97 (2003). Valid consideration requires that the parties bargain for performances or return promises. *Harmon v. Philip Morris, Inc.*, 120 Ohio App. 3d 187, 190 (1997).

A performance or return promise is bargained for if the promisor sought it in exchange for the other party's promise and gave his/her promise in exchange for the procured promise. *Id.* (quoting Restatement (Second) of Contracts § 71(2) (1981)).

Performance may consist of: "1) an act other than a promise; 2) a forbearance; or 3) the creation, modification, or destruction of a legal relation." *Id.* Valid consideration may consist of either a benefit to the promisor or a detriment to the promisee. *Id.* (quoting *Brads v. First Baptist Church*, 89 Ohio App. 3d 328, 336 (1993)). A benefit may consist of some right, interest or profit accruing to the promisor, while a detriment may consist of the promisee's forbearance, loss or acceptance of responsibility. *Id.*

Valid consideration supports the Agreement. Both parties promised that they would submit all disputes, not excluded by the Agreement's terms, to arbitration.[2]

That the parties agreed to exclude certain claims which Price believes the defendants are more likely to bring is irrelevant. This is not a question of mutuality, but of adequacy of consideration. A court generally will not inquire into whether each party's legal detriment was sufficiently adequate. *Rogers v. Runfola and Assoc., Inc.*, 57 Ohio St. 3d 5, 6 (1991); *see also,* 3 Williston, Contracts (4th ed), § 7:21, pp 383-386. Regardless, courts have upheld arbitration agreements allowing one party to avoid arbitration under limited circumstances.[3] *See Morrison v. Circuit City Stores, Inc.,* 70 F. Supp. 2d 815, 823 (S.D. Ohio 1999) ("Both [p]laintiff and [d]efendant signed the Agreement within the short job application, and even though [d]efendant could alter or terminate the Agreement or the Rules and Procedures, [d]efendant could only do so at certain times and only after providing 30 days' notice to employees.").

### b. Prohibitive Costs

Price also contends that arbitration will be prohibitively costly, but does not offer any evidence to support this claim.

---

[2] Price bases her argument on the court's decision in *Harmon*. There, the court found that consideration was absent from an arbitration agreement which required employees to arbitrate all claims against the employer, but allowed the employer to modify the agreement at any time and, thereby, avoid arbitration of any of its claims against its employees. *See Harmon*, *supra,* 120 Ohio App. 3d at 190. Accordingly, the court found that the employer had not bargained away any rights under the Agreement. In this case, defendants retain no such rights. Defendants must arbitrate all claims except those the arbitration clause exempts. This requirement constitutes valid consideration.

[3] Price's adequacy argument also overlooks the fact that the Agreement reserves for her, exclusively, the right to proceed in small claims court.

A party seeking to invalidate an arbitration agreement on the grounds of prohibitive costs must prove the likelihood of incurring such costs. *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St. 3d 352, 365 (2008). Without any support from the record, mere proof of arbitration costs alone will not render an agreement unconscionable. *Garcia v. Wayne Homes, LLC*, 2002 WL 628619, at *13 (Ohio Ct. App.) (stating that plaintiff's failure to produce sufficient facts or allegations showing difference in costs between arbitration and litigation in court did not invalidate arbitration).

Price's unsupported allegations are insufficient to support her claim that the cost-splitting provisions render the arbitration agreement substantively unconscionable. She simply asserts that the Agreement requires that she pay costs for claims in excess of the loan amount while the defendants must only pay for one day of hearing fees.[4] [Doc. 20]. Price does submit any evidence or allegations regarding her own financial situation. *Taylor Bldg. Corp. of Am.*, *supra,* 117 Ohio St. 3d at 365 (rejecting prohibitive costs argument where plaintiffs "failed to show that mediation or arbitration costs would be prohibitively high for [them]."). Nor does she present any evidence regarding the cost of arbitration for similar cases. By merely pointing out the provisions she finds unfair, she, at most, suggests a risk of incurring extra costs under arbitration. *See Green Tree*, *supra,* 531 U.S. 79 (ruling that a mere risk that costs will be excessive is not sufficient to render an arbitration agreement unconscionable). In light of the lack of evidence in the record, I find that Price has not proved that arbitration would be unconscionably costly.[5]

---

[4] Plaintiff's assertion misreads the Agreement. The Agreement provides that she will have to pay costs for hearings after the first day only if she alone requests them. If the arbitrator requests them, the parties shall share the fees. Likewise, if the lender requests them, it will pay any such costs.

[5] Nor am I convinced that discovery would be appropriate as to the cost of arbitration. As discussed above, Price must prove that the Agreement is both procedurally and substantively unconscionable. As she has failed to allege that the Agreement was procedurally unconscionable, her unconscionability claim would fail regardless.

11

### c. Remedies

Price, lastly, alleges that the arbitration agreement is unconscionable because it limits her legal remedies, specifically the ability to bring a class action, join in claims with others, or act as private attorney general. Limitations on remedies in arbitration agreements are invalid if they violate a plaintiff's statutory rights. *Gilmer v. Interstate/Johnson Lane Corp*, 500 U.S. 20, 26-27 (1991). An agreement does not violate a plaintiff's rights merely because it precludes a limited number of remedies. *See Copeland v. Katz*, 2005 WL 3163296 (E.D. Mich.) (finding class action waiver in arbitration agreement not unconscionable); *Pivoris v. TCF Fin. Corp.*, 2007 WL 4355040 (N.D. Ill.) (compelling arbitration where plaintiff's right to act as private attorney general limited).

Price does not point out any statutory remedies which would be unavailable if I ordered Price to arbitrate her claims. Nor does Price argue that Congress intended to exclude any of the claims she raises from an arbitral forum. Furthermore, courts have found agreements circumscribing the rights Price lists conscionable.

Accordingly, I find the preclusion of the remedies Price identifies a valid restraint.

### Conclusion

Price does not present any evidence that the Agreement is either procedurally or substantively unconscionable. Accordingly, as the Agreement's broad terms encompass Price's contractual claims, the Agreement entitles defendants to have an arbitrator decide them.

For the foregoing reasons, it is hereby

ORDERED THAT:

1. Defendant's motion for a stay pending the completion of arbitration be, and the same hereby is granted; parties to file status report[s] within two weeks of the completion of arbitration proceedings; and

2. Plaintiff's request for discovery be, and the same hereby is denied.

So ordered.

s/ James G. Carr
James G. Carr
Chief Judge