IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Kathryn Q. Price,                                                          Case No. 3:08CV420

          Plaintiff

    v.                                                                                ORDER

Corey Taylor, *et al.*,

          Defendant

This dispute arises out of mortgage loans granted to Kathryn Q. Price that she was unable to afford. Price brought suit against the mortgage broker, mortgage companies, and appraisers involved, asserting claims for race and gender discrimination under the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*, race discrimination under 42 U.S.C. § 1982 and 42 U.S.C. § 1981, fraud, negligence, and breach of fiduciary duty.

Pending is defendant Select Appraisal, LLC (Select Appraisal)'s motion for summary judgment [Doc. 57]. For the following reasons, the motion is granted in part and denied in part.

**Background**

Price is an African American woman and the owner of her home, located at 2265 Whitney, Toledo, Ohio. She bought her home for $55,000 in August, 2001. Price lives with two of her children, a disabled adult daughter and a fourteen-year-old son with special needs. Price relies on Social Security Disability payments for income.

Prince refinanced her home in 2002 with defendant Midwest Financial & Mortgage Services (Midwest Financial). As part of the loan process, Midwest Financial hired defendant appraiser Emmanuel Yakumithis, who appraised the home to be worth $80,000. Price refinanced for $79,750.

The refinancing resulted in an adjustable-rate mortgage. In time, the payments rose beyond Price's means. Price filed for personal bankruptcy in 2005. Her bankruptcy paperwork lists the value of her home at $19,000 (the value according to the Lucas County Auditor), but notes it was appraised at $80,000 for her 2002 refinancing. She retained her home and mortgage in the bankruptcy.

Facing rising payments, Price again sought refinancing in 2006. After other lenders denied her applications, she returned to Midwest Financial. Midwest Financial hired Select Appraisal.

Select Appraisal sent a licensed appraiser to Price's home. The appraiser looked at the inside and outside of the home and the general neighborhood. The appraisal report describes the property as having no physical defects that affect livability, soundness or structural integrity. [Doc. 57-3, at 3]. The report notes, "No repairs needed for value. Normal physical depreciation. No external or functional depreciation. Average quality construction." *Id.* The report indicates that the home "has been well maintained and updated." *Id.*

The report determined the market value by using a sales comparison approach and valued the home at $89,000. The appraisal report does not consider the value reported by the Lucas County Auditor.

The appraisal report stated that its intended use "is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction," and that the intended user "is the lender/client." [Doc. 57-3, at 4].

The appraiser's certification in the report was subject to assumptions and limiting conditions, including that:

> Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances adverse conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist.

[Doc. 57-3, at 4].

At the end of the report, the appraiser certified and agreed that "the lender/client may disclose or distribute this appraisal report to [*inter alia*] the buyer." [Doc. 57-3, at 6]. The appraiser also certified and agreed that:

> The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

*Id.*

Midwest Financial received the appraisal report in March. Price closed on the 2006 refinance of her mortgage loan on April 10, 2006. Price refinanced her mortgage for $89,000. This second refinance was a thirty-year fixed-rate mortgage requiring Price to pay $734 a month.

In August, 2006, an electrical fire started in the night. Price learned that the electric and heating systems in her home were not up to state and city codes. The home had to be rewired. In December, 2006, Price fell through the attic floor and was stuck at the hip, coming through her children's bedroom ceiling.

Price filed this suit on February 20, 2008, against defendants Corey Taylor, Midwest Financial, HSBC Mortgage Services, Inc., Intervale Mortgage Corp., Select Appraisal and Emmanuel T. Yakumithis. WhenPrice filed this suit, the principle amount due on her 2006 refinanced mortgage was $88,275.10.

In 2010, she settled with HSBC Mortgage Services and Intervale Mortgage. The lenders forgave her mortgage debt, allowing her to keep her home.

Price maintains her suit against Midwest Financial, Select Appraisal, and the individual mortgage brokers on her claims for race and gender discrimination under the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*, race discrimination under 42 U.S.C. § 1982 and 42 U.S.C. § 1981, fraud, negligence, and breach of fiduciary duty.

Select Appraisal has filed a motion for summary judgment on all claims asserted against it.

**Standard of Review**

A party is entitled to summary judgment on motion under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, I accept the opponent's evidence as true and construe all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact. *Celotex*, *supra*, 477 U.S. at 323.

**Discussion**

Price claims that Select Appraisal discriminated against her on the bases of race and sex by overvaluing her home. As a result of the alleged overvaluing, Price claims she received a mortgage refinance loan greater than her home was worth and that she clearly was unable to afford. She asserts claims under the Civil Rights Act and Fair Housing Act, as well as state law claims for fraudulent and negligent misrepresentation.

**A. Federal Claims**[1]
**1. Section 1981 and Section 1982**

Select Appraisal argues that Price's claims under 42 U.S.C. §§ 1981 and 1982 are time-barred.[2] Both parties agree that neither statute includes limitation periods within which an action

---

[1] Neither Select Appraisal's answer to Price's complaint nor its motion for summary judgment responded to Price's federal claims, as Select Appraisal did not believe that these claims were being asserted against it. I held a telephone conference on May 2, 2011, and granted leave to Select Appraisal to file a supplemental brief addressing the federal claims, which Price insists were asserted against Select Appraisal as well as the other defendants. [Doc. 69].

[2] Select Appraisal requests leave to amend its answer and add the following affirmative defense: "Plaintiff's Civil Rights Claims, 42 U.S.C. § 1981 and 42 U.S.C. § 1982, are barred, in whole or in part, by the applicable statute of limitations. "An answer may be amended to include an inadvertently omitted affirmative defense [ . . . ] even after the time to amend [ . . . ] has passed." *Kontrick v. Ryan*, 540 U.S. 443, 459 (2004); Fed. R. Civ. P. 15(a) ("leave [to amend] shall be freely given when justice so requires."). As the plaintiff here has had ample opportunity to respond to Select Appraisal's statute of limitations defense, it is in the best interest of justice to decide this issue on the merits.

must be brought. Where Congress does not provide such a time limit, I look to "the most appropriate or analogous state statute of limitations to claims." *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987). Price asserts, however, that the catch-all four-year statute of limitations in 28 U.S.C. § 1658 for actions "arising under" federal statutes enacted after December 1, 1990, applies here because § 1981 was amended in November, 1991.

In *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004), the Supreme Court held that the four year limitations period of § 1658 governs "if the plaintiff's claim against the defendant was made possible by a post-1990 enactment." This approach, the Court noted, was consistent with Congress's intent to eliminate the practical problems of borrowing statutes of limitations without disrupting the settled expectations of litigants.

Congress amended § 1981 in November, 1991. Price asserts that the amendment to § 1981(b), defining "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship," made possible her claim for discrimination.[3]

The 1991 Act, including § 1981(b), created new rights because it overturned the Supreme Court's holding in *Patterson v. McLean Credit Union*, 491 U.S. 164,171 (1989), that "racial harassment relating to the conditions of employment is not actionable under § 1981." *See also Jones*, *supra*, 541 U.S. at 383. Thus, the definition of "contract" in the 1991 amendments made possible

---

[3] Price does not assert that there is any amendment to § 1982 that would make these claims subject to the four year limitations of § 1658 for actions "arising under" federal statutes enacted after December 1, 1990. The appropriate Ohio state law analogue controls the limitations period for her § 1982 claims.

6

claims based on conduct occurring after the formation of an employment contract. *Jones*, *supra*, 541 U.S. at 374.

Price's claim for relief under § 1981 alleges that defendants' "actions in extending Plaintiff refinancing [ . . . ] was [sic] discriminatory on the basis of her race and defendants discriminated against Plaintiff in her contract of refinance," and that these actions "constitute a violation of 42 U.S.C. § 1981." [Doc. 1-2, at 7]. Price's complaint does not invoke the 1991 amendments to § 1981, nor does the claim appear in any way dependant on rights created therein. Her housing complaints could have been brought prior to the 1991 amendments, and therefore I must look to "the most appropriate or analogous state statute of limitations to claims." *Goodman*, *supra*, 482 U.S. at 660.

Defendants assert that in situations involving housing discrimination, the most analogous state statute is Ohio's Fair Housing Act, Ohio Rev. Code § 4112.02(H).

Section 1982 provides a private right of action for victims of housing discrimination separate from Fair Housing Act claims. *Warner v. Perrino*, 585 F.2d 171 (6th Cir. 1978). Specifically, § 1982 protects the rights of all citizens to "inherit, purchase, lease, sell, hold, and convey real and personal property." Section 1981 is even broader in scope, protecting the rights of all citizens to "make and enforce contracts." But Price's claims under § 1981 and § 1982 are based on the same set of facts supporting her racial discrimination claims under the Fair Housing Act (FHA), 42 U.S.C. § 3601 *et seq.* I look, therefore, to Ohio's Fair Housing Act, Ohio Rev. Code § 4112.02(H). *See Johnston, et al. v. GSM Mgmt. Co., et al.*, 2006 WL 2813379, *9 (N.D. Ohio).

Ohio's Fair Housing Act provides that it shall be unlawful to:

[d]iscriminate against any person in the making or purchasing of loans or the provision of other financial assistance for the acquisition, construction, rehabilitation, repair, or maintenance of housing accommodations, or any person in the making or purchasing of loans or the provision of other financial assistance that is secured by

7

> residential real estate, because of race, color, religion, sex, military status, familial status, ancestry, disability, or national origin or because of the racial composition of the neighborhood in which the housing accommodations are located . . . .

In the present case, the § 4112.02(H) of Ohio's Fair Housing Act is the most analogous state statute.

Pursuant to § 4112.051(A)(2), any action brought under § 4112.02(H) must be brought within one year of the alleged discriminatory activity. The appraisal of Price's home occurred in March, 2006. Price closed on the mortgage loan in April, 2006. Price's claim, filed February 20, 2008, was filed too late. Her Civil Rights claims against Select Appraisal are therefore time-barred.

### 2. Fair Housing Act

The federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, guarantees fair housing and prohibits housing discrimination because of race, color, religion, sex, handicap, familial status or national origin. Section 3605 applies to "the making or purchasing of loans or providing other financial assistance for maintaining a dwelling previously acquired." *Eva, et al., v. Midwest National Mortgage Bank, Inc. et al.*, 143 F. Supp. 2d 862, 886 (N.D. Ohio 2001).

To prevail on her FHA claims, Price must first establish a prima facie case of housing discrimination by presenting either direct evidence of intentional discrimination or circumstantial evidence from which discrimination can be inferred. *Lindsay, et al. v. Yates, et al.*, 578 F.3d 407, 414–15 (6th Cir. 2009).

Price asserts that her claims are based on "reverse redlining"—a practice in which a lender unlawfully discriminates by extending credit to a neighborhood or class of people on terms less favorable than would have been extended to people outside the particular class at issue. *Matthews, et al., v. New Century Mortgage Corp., et al.*, 185 F. Supp. 2d 874, 886 (S.D. Ohio 2002) (holding that such claims are cognizable under the FHA).

To establish a reverse redlining claim, "a plaintiff need not show that the lender refused to transact business, but only that the lender refused to transact business *on fair terms*." *Id.* (emphasis in original). Thus, a *prima facie* case of reverse redlining under § 3605 requires Price to show: "1) that she is a member of a protected class; 2) that she applied for and was qualified for loans; 3) that the loans were given on grossly unfavorable terms; and 4) that the lender continues to provide loans to other applicants with similar qualifications, but on significantly more favorable terms." *Id.*

Even accepting Price's arguments that the loan was grossly unfavorable and that the appraiser's determinations about the property set the basis for the terms of the loan, Price has not established a *prima facie* case of reverse redlining discrimination. She has presented no evidence that she was targeted for unfair loans on the basis of her membership in a protected class. Her FHA claims against Select Appraisal are therefore dismissed as a matter of law.

### B. State Law Claims

In addition to her federal claims, Price asserts claims of fraud and negligence against Select Appraisal. Select Appraisal argues that her claims fail for lack of privity and because Price has suffered no damages.

### 1. Privity

Select Appraisal argues that Price has no basis for a direct claim against it because there is no privity between the parties. Price argues that she can maintain her claim despite lack of privity because Select Appraisal knew that Price would rely on the appraisal and because Price justifiably relied on the information.

In general, Ohio law permits a plaintiff to recover damages for economic loss only if the plaintiff had a contractual relationship with the defendant. *See Caruso v. Nat'l City Mortgage Co.*,

9

187 Ohio App. 3d 329, ¶13 (2010). In the area of professional malpractice, however, the Ohio Supreme Court has held that an accountant could be liable in tort for economic losses caused by a negligent representation made while rendering professional services even in the absence of privity of contract. *Hadden View Investment Co. v. Coopers & Lybrand*, 70 Ohio St. 2d 154 (1982).

The Ohio Supreme Court has not addressed whether a strictly tort-based liability would apply to real estate appraisers. But several appellate courts have held that tort-based liability for economic damages can apply to an appraiser who provides an inaccurate appraisal despite the absence of privity. *E.g.*, *Perpetual Federal Savings & Loan Ass'n v. Porter & Peck, Inc.*, 80 Ohio App. 3d 569 (1992).

In *Washington Mutual Bank v. Smith*, 2002 WL 31812944, *4 (Ohio App. Ct), the court recognized that recovery from the appraiser, despite lack of privity, may be appropriate in the "narrow set of circumstances" "where an unsophisticated consumer could be duped into the purchase of an overpriced property acting in reliance on an appraisal that was negligently or fraudulently prepared." *Accord*, *Rece v. Dominion Homes, Inc.*, 2008 WL 73707 (Ohio App. Ct.). The same considerations apply where the consumer refinances her home in reliance on a negligently or fraudulently prepared appraisal .

There is no dispute that there was no privity. Still, Select Appraisal should have foreseen Price's reliance on its appraisal. Its own appraisal report in this case stated that "[t]he borrower . . . may rely on this appraisal report as part of any mortgage finance transaction." [Doc. 57-3, at 6].

But the fact that an appraiser should have foreseen that a potential borrower is within the limited class of persons who would rely on the appraisal is not enough. *See Washington Mutual*

10

*Bank*, *supra*, 2002 WL 31812944 at *4; *Rece*, *supra*, 2008 WL 73707 at *8. Price must show that she justifiably relied on the appraisal in order to be entitled to recovery from the appraiser. *Id.*

Select Appraisal asserts that Price cannot have reasonably relied on the March, 2006, appraisal quoting a value of $89,000 because her 2005 bankruptcy filing "admits a belief at that time that her home was worth only $19,000." [Doc. 57, at 5].

The figure in Price's bankruptcy petition came from the Lucas County Auditor's Office, which may or may not have accurately assessed the value of Price's property for property tax purposes. A appraiser's assessment, moreover, in the midst of a housing bubble, may or may not have accurately reflected the ten existing fair market value. Price understandably would not have invested in an appraisal when declaring bankruptcy. There is, moreover, undoubtably a disparity in the relative expertise of Select Appraisal and Price.

I decline to preclude Price from asserting this claim solely on the basis of the statement in Price's bankruptcy petition. A reasonable jury may find that Price was either unsophisticated, misinformed or untruthful in her bankruptcy filings and still conclude that she reasonably relied on Select Appraisal's appraisal. Construing all evidence in Price's favor, I find that there remains an issue of fact as to whether Price justifiably relied on the appraisal in entering into the second mortgage loan, and whether Select Appraisal may therefore be liable for the alleged tortious conduct despite lack of privity.[4]

---

[4] In its reply brief in support of its motion for summary judgment, Select Appraisal attacks the evidence on which Price relies to support her claim that Select Appraisal's appraisal of her home was inaccurate. [Doc. 68, at 2]. Select Appraisal asserts that Price is not competent to testify as to the accuracy of comparable sales, that the home inspection report is both hearsay and irrelevant, and that she has not identified an expert witness prepared to testify that the appraisal performed by Select Appraisal substantially deviated from the fair market value of her home. *Id.* Because none of these facts are salient to Select Appraisal's privity argument, it appears that Select Appraisal is obliquely

11

**2. Damages**

Select Appraisal argues, in the alternative, that Price cannot succeed on her claims because she cannot show damages.[5] Ohio law requires proof of damages for claims based on both fraud and negligence. *Rece*, *supra*, 2008 WL 73707 at *6. As a result of a settlement with other defendants in this case, Price owns her home clear of debt.

Price asserts, however, that the mortgage does not represent the extent of her damages. She claims she suffered emotional damages and impaired credit. She also claims that she has "had to have repairs done to bring the house up to code." [Doc. 58, at 9].

Regardless of the veracity of the appraisal report, the repairs to the house cannot properly be categorized as damages resulting from an allegedly fraudulent or negligent appraisal. The appraisal did not cause the house to be in violation of the housing code.

Select Appraisal does not address Price's claims for emotional damage and damage to her credit. But recovery for negligent misrepresentation is limited to "pecuniary loss." Restatement

---

asserting an additional basis for summary judgment—lack of evidence demonstrating a false statement in the appraisal. The jury can assess whether, in light of the evidence—the pictures of her home's condition and need to bring the wiring up to Code (a fact, not hearsay) whether the appraisal was fair and accurate or fraudulently or negligently prepared. *See Urbanek v. All State Home Mortg. Co.*, 178 Ohio App. 3d 493, 498 (2008) ("A plaintiff who prosecutes a fraud claim has the burden of proving that the defendant knowingly and intentionally misled or deceived the plaintiff. This burden . . . must be proved by 'direct evidence or justifiable inferences from established facts.'") (quoting *Doyle v. Fairfield Mach. Co., Inc.*, 120 Ohio App. 3d 192, 208 (1997)).

[5] Select Appraisal's argument, although labeled "Plaintiff Suffered No Damages," also includes the assertion that Price cannot show damages "caused by justifiable reliance." [Doc. 57, at 5]. Select Appraisal argues that because Price believed her home to be valued at $19,000, as indicated on her 2005 bankruptcy filing, she could not have relied on the appraisal, and so no fraudulent or negligent misrepresentations caused her damage. Because this argument exactly follows the argument regarding justifiable reliance for purposes of the exception to the privity requirement, there is no need to address it again here. There remains an issue of material fact on this point.

(Second) of Torts § 552(B), *cited in Haddon View Inv. Co.*, *supra*, 70 Ohio St. 2d at 157. Price's claims for emotional distress and harm to her credit score do not support a claim for negligent misrepresentation. *Middleton v. Rogers Ltd., Inc.*, 2011 WL 3107699, *8 (S.D. Ohio). Price cannot therefore recover for negligent representation.

Under Ohio law, emotional damages may be recovered in fraud claims where the conduct complained of was wanton or malicious. *Doyle v. Fairfield Machine Co., Inc.*, 120 Ohio App. 3d 192, 221 (1997); *Smith v. Nat'l Home Life Assurance Co.*, 1983 WL 4462 (Ohio App. Ct.) (citing *Schultz v. Barberton Glass Co.*, 4 Ohio St. 3d 131, 135–36 (1983)). Where such is the case, consequential damages for mental and emotional distress are appropriate.

There is nothing in the record before me to suggest that Select Appraisal acted with malice, so the question is whether the allegedly fraudulent misrepresentations were made with wanton disregard. Wanton disregard is defined as "the failure to exercise any care whatsoever." *Fabrey v. McDonald Village Police Dep't*, 70 Ohio St. 3d 351, 356 (1994).

As noted above, Select Appraisal argues that Price has presented no admissible evidence regarding the accuracy of the appraisal. Price has submitted evidence that the appraisal stated her home was in good repair, and that in the succeeding months, after a fire and a fall through the bedroom ceiling, Price learned that her home was not up to code and that significant repairs were necessary for safe habitation. She has presented evidence such that a jury could find the appraisal report's representations were made with wanton disregard, and therefore she may assert damages for emotional distress. Select Appraisal does not challenge her assertion of emotional distress, and as Price has presented both her own affidavit and one from her treating physician, there is evidence supporting her claim of damages.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT defendant Select Appraisal's motion for summary judgment [Doc. 57] be, and the same hereby is:

1. Granted as to plaintiff's federal claims;

2. Granted as to plaintiff's negligent misrepresentation claims; and

3. Denied as to plaintiff's fraud claims.

4. A scheduling conference is set for September 20, 2011 at 8:30 a.m. Out of town counsel may participate by phone; the Court will initiate the phone call.

So ordered.

/s/James G. Carr
Sr. United States District Judge